676 F.2d 1338
 4 Ed. Law Rep. 36
 Michael CHILDERS, Plaintiff-Appellant,
v.
INDEPENDENT SCHOOL DISTRICT NO. 1 OF BRYAN COUNTY, STATE OF
OKLAHOMA(a/k/a Silo Public Schools); Robert Johns,
individually and in his official capacity as President of
the Board of Education; Jim Green, Ken Masters, and Benny
Holt, all individually and jointly in their official
capacities as members of the Board of Education, Defendants-Appellees.
 No. 80-1694.
 United States Court of Appeals,
Tenth Circuit.
 April 26, 1982.
 
 Ronald E. Stakem of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl. (Clifford A. Jones, Oklahoma City, Okl., with him on the brief), for plaintiff-appellant.
 Ronald L. Day of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendants-appellees.
 Before SETH, McWILLIAMS, and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Michael Childers sued Independent School District No. 1 of Bryan County, Oklahoma, a/k/a Silo Public Schools and the members of its Board of Education (hereinafter collectively referred to as the "Board") under 42 U.S.C. § 1983. Childers alleged that the Board's decision to change his teaching duties denied him a property interest without due process of law in violation of the Fourteenth Amendment, and impermissibly infringed on his First Amendment rights. The trial court granted the Board's motion to dismiss under Fed.R.Civ.P. 12(b), holding that Childers had failed to state a claim upon which relief can be granted.
 
 
 2
 On appeal Childers contends that his pleadings were sufficient to state a claim under both the First and Fourteenth Amendments. He also cites as error the court's failure to grant him leave to amend his pleadings to add a claim based on his subsequent termination by the Board. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 I.
 The Dismissal Order
 
 3
 We initially address the Board's contention on appeal that we should treat the motion to dismiss as one for summary judgment. The Board points out that matters outside the pleadings were attached to its brief supporting its motion to dismiss and were not excluded by the trial court. The Board contends its motion was thereby converted to one for summary judgment pursuant to Fed.R.Civ.P. 12(b).[1]
 
 
 4
 Rule 12(b) requires that when a dismissal motion is converted to a summary judgment motion, the trial court must proceed under Fed.R.Civ.P. 56. Torres v. First State Bank, 550 F.2d 1255, 1257 (10th Cir. 1977). "The provisions of Rule 56(c)[2] for notice to the opposing party and an opportunity for him to serve opposing affidavits are mandatory. Noncompliance therewith deprives the court of authority to grant summary judgment." Id. Accord Lucas v. Bechtel Corp., 633 F.2d 757, 759 (9th Cir. 1980). Here the district court did not comply with Rule 56(c), and its order granting the motion to dismiss did not refer to or rely on matters outside the pleadings. This court has held that under these circumstances the motion remains the "functional equivalent of a motion to dismiss." Smith v. Yellow Freight System, 536 F.2d 1320, 1322 (10th Cir. 1976).
 
 
 5
 The Rule 12(b) order of dismissal in this case is proper only if the complaint, taking all the allegations therein as true, fails to state a claim without consideration of any material outside the pleadings. Torres, 550 F.2d at 1257; see Smith, 536 F.2d at 1322.
 
 II.
 The Fourteenth Amendment Claim
 
 6
 Childers' complaint states that he was a tenured teacher and that he was involuntarily reassigned from teaching vocational-agriculture to teaching regular classroom subjects. This change in teaching assignments resulted in a salary decrease and the loss of other benefits. Childers alleges that the above acts denied him a property interest without due process of law.
 
 
 7
 Property interests are created and defined by state law. Bishop v. Wood, 426 U.S. 341, 345 and n.7, 96 S.Ct. 2074, 2077 and n.7, 48 L.Ed.2d 684 (1976). The Oklahoma Supreme Court has recently examined the relevant state statutes and concluded that although a tenured teacher does have a property right in continued employment, he does not have a property interest in any particular position.
 
 
 8
 "In Oklahoma, teachers contracts are automatically renewed on a continuing basis unless the Board or the teacher acts to prevent the automatic renewal of employment. The contract for the ensuing year is not subject to the requirement that it contain identical terms as those found in the preceding year's contract. It is only necessary that the teacher receive a contract on the same salary schedule as other teachers in the district receive for the ensuing year. Teachers do not acquire the right to be employed in any particular position, rather the right of a tenured teacher is to continuing employment. Subject to the statutory boundaries, the Board may assign teachers within the school system as they desire."
 
 
 9
 Maupin v. Independent School District No. 26, 632 P.2d 396, 398-99 (Okla.1981) (footnotes omitted) (emphasis added).
 
 
 10
 We conclude that under Oklahoma law neither Childers' reassignment nor the resulting loss of salary and benefits deprived him of a protected property interest. The district court's decision on this issue is affirmed.
 
 III.
 The First Amendment Claim
 
 11
 In his cause of action based on the First Amendment, Childers alleges that the Board reassigned him in retaliation for the exercise of his constitutional right to help organize a teachers union and to support a candidate for the School Board election. In dismissing the claim, the trial court concluded that the reassignment did not create an unconstitutional deprivation.
 
 
 12
 Public employment may not be conditioned upon relinquishment of the right to engage in activities protected by the First Amendment. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). However, "the state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Id. To accommodate these competing interests, the Court in Pickering devised a balancing test under which "the interest of an employee in 'commenting upon matters of public concern' is weighed against the interest of the employer 'in promoting the efficiency of the public services it performs through its employees.' " Key v. Rutherford, 645 F.2d 880, 884 (10th Cir. 1981) (quoting Pickering, 391 U.S. at 568, 88 S.Ct. at 1734). Under this test, an employee's First Amendment rights are protected unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee. Key, 645 F.2d at 844; Columbus Education Ass'n v. Columbus City School District, 623 F.2d 1155, 1159 (6th Cir. 1980).
 
 
 13
 If an employee's activities are protected under the Pickering test, he must then demonstrate that this conduct was a "motivating factor" in the detrimental employment decision. See Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The employer "then bears the burden of showing by a preponderance of the evidence that it would have reached the same decision ... in the absence of the protected activity." Key, 645 F.2d at 885; Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576.
 
 
 14
 In the instant case, the Board argues in essence that the district court should be affirmed because reassignment, as opposed to termination or nonrenewal, does not rise to a significant infringement of activities protected by the First Amendment. We disagree. "Where, as here, important conditions of employment are involved, a public employee will not be foreclosed from § 1983 relief merely because the impermissible retaliation did not result in the termination of his employment." Bickel v. Burkhart, 632 F.2d 1251, 1255 n.6 (5th Cir. 1980). Retaliation that takes the form of altered employment conditions instead of termination may nonetheless be an unconstitutional infringement of protected activity. Allaire v. Rogers, 658 F.2d 1055, 1058 n.2 (5th Cir. 1981). See also McGill v. Board of Education, 602 F.2d 774, 780 (7th Cir. 1979); Rosado v. Santiago, 562 F.2d 114, 119 (1st Cir. 1977).
 
 
 15
 Childers alleges that during the 1977-78 school year he participated in the formation of a teachers union which became active in the spring of 1978, the same time the Board notified Childers of his reassignment. Childers further alleges that the Board was hostile to his organizational efforts as well as to his support of an unsuccessful Board candidate for the January 1978 election, and that the reassignment decision in March 1978 was motivated by the Board's desire to retaliate against Childers' constitutionally protected activity. Finally, as we have previously noted, Childers claims that he received a lower salary and the loss of other benefits as a result of the change in his teaching duties. These allegations are sufficient to withstand a motion to dismiss for failure to state a claim.
 
 IV.
 The Statute of Limitations
 
 16
 The Board argues that Childers' action is barred by the short statute of limitations found in Oklahoma's Political Subdivision Tort Claims Act, 51 Okla.Stat. § 151 et seq. (1978) (Act), which it contends is the most analogous state provision. Although the trial court did not base its dismissal on this issue, parties are free to urge alternate grounds for upholding the decision below. See California Bankers Ass'n v. Shultz, 416 U.S. 21, 71, 94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974).
 
 
 17
 Because Congress provided no statute of limitations for suits brought under 42 U.S.C. § 1983, the courts adopt the most appropriate one provided by state law. Spiegel v. School District No. 1, Laramie County, 600 F.2d 264, 265 (10th Cir. 1979). The Supreme Court has made clear, however, that the federal policy behind the civil rights statutes must be considered when there is a choice to be made among various state limitation statutes.
 
 
 18
 "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies.... State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute."
 
 
 19
 Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). Accord Spiegel, 600 F.2d at 2565 n.3.
 
 
 20
 The Political Subdivision Tort Claims Act is a waiver of sovereign immunity conditioned on the limitations provided in the Act itself. Section 156 of the Act[3] establishes the procedural framework a claimant must follow, and requires that the claim be filed with the political subdivision within 120 days. If the claim is administratively denied, the claimant must file his cause of action in the courts within six months. Childers did not follow the procedures set forth in the Act and the Board argues that his action is therefore barred. We do not agree with this contention.
 
 
 21
 "(A) deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right." Monroe v. Pape, 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring). When choosing an appropriate state statute of limitations, therefore, the court must select one that is "sufficiently generous in the time periods to preserve the remedial spirit of federal civil rights actions." Shouse v. Pierce County, 559 F.2d 1142, 1146 (9th Cir. 1977) (footnote omitted).
 
 
 22
 Moreover, "limitations periods for state statutory nonjudicial proceedings are inapplicable to civil rights actions in courts of law." Zuniga v. AMFAC Foods, Inc., 580 F.2d 380, 384 n.5 (10th Cir. 1978). We agree with the court in Sethy v. Alameda County Water District, 545 F.2d 1157, 1162 (9th Cir. 1976) (en banc) that "a plaintiff seeking in federal court to vindicate a federally created right cannot be made to jump through the procedural hoops for tort-type cases that may have commended themselves to the legislative assemblies of the several states." See also Donovan v. Reinbold, 433 F.2d 738, 742 (9th Cir. 1970); Gunther v. Miller, 498 F.Supp. 882, 882-83 (D.N.M.1980).
 
 
 23
 In sum, we hold that the procedures and limitation periods set out in the Political Subdivision Tort Claims Act are not applicable to claims brought under 42 U.S.C. § 1983 because they are inconsistent with the broad remedial purposes of the federal civil rights acts.
 
 V.
 Denial of Motion to Amend
 
 24
 Childers contends that the district court abused its discretion in refusing to permit him to amend his pleadings. Childers' complaint alleges that the Board directed his supervisor to find sufficient cause to fire him. Childers was in fact terminated during the pendency of the suit below and sought leave to amend his pleadings to add claims based on this action. The trial court granted the motion to dismiss without responding to Childers' request to amend.
 
 
 25
 Although leave to amend is within the sound discretion of the trial court, Fed.R.Civ.P. 15(a) provides that "leave shall be freely given when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, refusing leave to amend is only justified upon a showing of undue delay, bad faith, or undue prejudice to the opposing party. Id.; see also R. E. B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751-52 (10th Cir. 1975).
 
 
 26
 No reason appears in the record for denying leave to amend. "(O)utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman, 371 U.S. at 182, 83 S.Ct. at 230. The court's refusal is particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint, and because the motion to dismiss was granted upon grounds that would have been eliminated by the proposed amendment. We hold that denial of leave to amend under these circumstances constituted an abuse of discretion.
 
 
 27
 The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings.
 
 
 
 [1]
 Fed.R.Civ.P. 12(b) provides in pertinent part:
 "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
 
 
 [2]
 Fed.R.Civ.P. 56(c) provides:
 "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 
 
 [3]
 Section 156 provides in pertinent part:
 "A. Any person having a claim against a political subdivision or an employee within the scope of this act shall petition the political subdivision for any appropriate relief including the award of money damages.
 "B. A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs.
 "C. The written notice of claim shall state the time, place and circumstances of the claim and the amount of compensation or other relief demanded. Failure to state either the time, place, circumstances and (sic) amount of compensation demanded shall not invalidate the notice unless the claimant declines or refuses to furnish such information within ninety (90) days after demand by the political subdivision. No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision. The time for giving written notice of claim does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity."