**HALL–KIMBRELL ENVIRONMENTAL SERVICES, INC., a corporation, Plaintiff,**

v.

**ARCHDIOCESE OF DETROIT, an Ecclesiastical Corporation, Defendant.**

No. 94–4035–SAC.

United States District Court, D. Kansas.

Jan. 18, 1995.

James P. Nordstrom, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Hall–Kimbrell Environmental Services, Inc.

John J. Jurcyk Jr., Jeanne Gorman Rau, T. Daniel Venters, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, and Fredrick J. Dindoffer, and Lisa M. Panourgias, Bodman, Longley & Dahling, Detroit, MI, for Archdiocese of Detroit.

## MEMORANDUM AND ORDER

CROW, District Judge.

On March 4, 1994, Hall–Kimbrell, a Delaware corporation with its principal place of business in Kansas, commenced this breach of contract diversity of citizenship action against the Archdiocese of Detroit (Archdiocese), an ecclesiastical corporation established and existing under the laws of the State of Michigan. On March 16, 1994, Hall–Kimbrell filed an amended complaint. The amended complaint essentially alleges that on or about June 15, 1988, Hall–Kimbrell entered into a written contract with the Archdiocese. The contract required Hall–Kimbrell, an accredited asbestos contractor, to prepare and submit asbestos management plans for the schools of the Archdiocese in order to satisfy the requirements of the Asbestos Hazard Emergency Response Act (AHERA). In exchange, the Archdiocese agreed to pay Hall–Kimbrell $463,587.70.

The Archdiocese made payments under the agreement until the plans drafted by Hall–Kimbrell were rejected by the Michigan Department of Public Health (MDPH). At that point, the Archdiocese had paid $380,000 to Hall–Kimbrell, leaving $83,587.88 of the $463,587.70 unpaid. Based upon the Archdiocese' assessment that Hall–Kimbrell had not fulfilled its part of the bargain, the Archdiocese refused to make any further payments.

In this action, Hall–Kimbrell seeks the $83,587.88 that the Archdiocese has refused to pay. In the Archdiocese' amended answer to Hall–Kimbrell's first amended complaint, the Archdiocese denies that it has wrongfully withheld payment from Hall–Kimbrell. The Archdiocese asserts a counterclaim, essentially seeking a refund of the $380,000 that it has already paid to Hall–Kimbrell.

This case comes before the court upon the Archdiocese' motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss or transfer based on the doctrine of forum non conveniens (Dk. 20). The Archdiocese argues the exercise of personal jurisdiction over it would violate due process. In the alternative, the Archdiocese contends that Kansas is either an improper or inconvenient venue. The Archdiocese contends that the Eastern District of Michigan is the proper or superior venue.

Hall–Kimbrell responds, arguing that the exercise of personal jurisdiction over Archdiocese would not violate due process. Hall–Kimbrell contends that Kansas is a proper venue and that this court should not transfer this case to Michigan.

The court having considered the briefs of counsel, the plaintiff's first amended complaint, and the applicable law, the court grants the Archdiocese' motion to the extent

that it requests a transfer of this case to the Eastern District of Michigan.

## AHERA: A Brief Overview

In 1986, Congress passed the Asbestos Hazard Emergency Response Act (AHERA). The purpose of the AHERA is to

(1) to provide for the establishment of Federal regulations which require inspection for asbestos-containing material and implementation of appropriate response actions with respect to asbestos-containing material in the Nation's schools in a safe and complete manner;

(2) to mandate safe and complete periodic reinspection of school buildings following response actions, where appropriate; and

(3) to require the Administrator to conduct a study to find out the extent of the danger to human health posed by asbestos in public and commercial buildings and the means to respond to any such danger.

15 U.S.C. § 2641(b). *See Safe Bldgs. Alliance v. EPA,* 846 F.2d 79 (D.C.Cir.) (explaining history of AHERA), *cert. denied,* 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 355 (1988). Pursuant to the Congressional mandate, the EPA has promulgated regulations implementing AHERA. Those regulations are found at 40 C.F.R. §§ 763.80–.99 (Subpart E).

Through the regulations promulgated by the EPA, AHERA requires, *inter alia,* each local educational agency (LEA) to develop an asbestos management plan for school buildings under its authority, and to complete implementation of such plan in a timely fashion. 15 U.S.C. § 2643(i)(1); 40 C.F.R. § 763.93. AHERA further provides:

(b) Governor requirements. Within 360 days after the date of the enactment of this title [enacted Oct. 22, 1986], the Governor of each State—

(1) shall notify local educational agencies in the State of where to submit their management plans under this section, and

(2) may establish administrative procedures for reviewing management plans submitted under this section.

If the Governor establishes procedures under paragraph (2), the Governor shall designate to carry out the reviews those State officials who are responsible for implementing environmental protection or other public health programs, or with authority over asbestos programs, in the State.

15 U.S.C. § 2645(b). In Michigan, the governor has apparently assigned the task of reviewing asbestos management plans to the Michigan Department of Public Health (MDPH).

Failure to comply with AHERA can result in substantial civil penalties. *See* 15 U.S.C. § 2647.

## Relevant Facts

The Archdiocese, an ecclesiastical organization, is based entirely in the State of Michigan with its principal business office in Detroit, Michigan. The Archdiocese has never carried any of its operations in the State of Kansas. The Archdiocese has never owned, leased or rented property in Kansas. It has no employees in Kansas, nor does it maintain any agents in this state.

Hall–Kimbrell initially approached the Archdiocese in an effort to sell its services as an accredited asbestos contractor. Hall–Kimbrell sent an introductory letter to the Archdiocese in November 1987. Thereafter, representatives of Hall–Kimbrell telephoned representatives of the Archdiocese in Michigan in January 1988. Following those initial contacts by Hall–Kimbrell, Hall–Kimbrell suggested and offered to fly a representative of the Archdiocese to its offices in Lawrence, Kansas, at Hall–Kimbrell's expense, as a further means of introducing itself to the Archdiocese. The Archdiocese accepted that offer, sending Richard D. Happley, the Building Director for the Archdiocese of Detroit to Hall–Kimbrell's headquarters and laboratories in Lawrence, Kansas. During his visit, Happley and Hall–Kimbrell discussed the asbestos consulting services that Hall–Kimbrell might provide to the Archdiocese.

Following those initial contacts, the parties conducted negotiations by telephone and mail. On June 6, 1988, Hall–Kimbrell sent a proposal from its offices in Aurora, Illinois, to the Archdiocese. On June 15, a contract and

an addendum were finalized when the Archdiocese signed the contract at its offices in Detroit, Michigan. Portions of the contract necessarily required performance of the contract in Michigan, *i.e.*, inspection of the Archdiocese' school buildings. Other portions of the contract could have been performed in any state. Much of the work on the project, including the laboratory analysis of asbestos samples, preparation of management plans, coordination of field inspectors, preparation of folders for field inspectors and all CADD work, was, however, performed in Lawrence, Kansas. Pursuant to the terms of contract, the Archdiocese made payments directly to Hall–Kimbrell at its corporate headquarters in Lawrence, Kansas.

The contract did not specify, and the Archdiocese was essentially unconcerned, how Hall–Kimbrell decided to staff the project. Hall–Kimbrell's inspectors of the Archdiocese' property came from Westerville, Ohio, and Lawrence, Kansas. On occasion, during those inspections, samples of materials suspected of containing asbestos were taken.

During the period of inspection and preparation of reports, telephone calls and correspondence were apparently exchanged between the Archdiocese' representatives, located in Michigan, and Hall–Kimbrell's representatives, located in Westerville, Ohio, and Lawrence, Kansas.

The initial asbestos management reports were prepared by Hall–Kimbrell employees in 1988–1989. The management plans prepared by Hall–Kimbrell were submitted to both the United States Environmental Protection Agency (USEPA) and the MDPH. Those plans were rejected. Hall–Kimbrell subsequently revised and resubmitted the rejected plans to the MDPH. The MDPH reviewed and approved a few of the revised plans. However, on October 26, 1992, the MDPH informed the Archdiocese that it would not review the balance of the revised asbestos management plans, claiming the lack of funds and resources precluded such review. The MDPH's letter indicates that those plans that it did not review "remain in a rejected status." The Archdiocese is apparently unwilling to run the risk of implementing the amended asbestos management plans for its schools when those plans stand in a "rejected status" by the State of Michigan.

As a result of the perceived deficiencies in the asbestos management plans prepared by Hall–Kimbrell for the Archdiocese, on August 29, 1991, the USEPA issued an administrative complaint and notice of opportunity for hearing against Hall–Kimbrell. Count I of the complaint alleged that Hall–Kimbrell failed to properly identify all homogenous areas of suspected asbestos-containing building materials at 162 school buildings owned by the Archdiocese in violation of 40 C.F.R. § 763.85. Count II of the complaint alleged that Hall–Kimbrell failed to properly develop management plans for the Archdiocese' school buildings, in violation of 40 C.F.R. § 763.93. Each of these violations subjected Hall–Kimbrell to civil penalties pursuant to 15 U.S.C. § 2614.

On September 29, 1992, Hall–Kimbrell entered a consent order with the USEPA, completely settling the violations alleged in the complaint. As part of the settlement, the USEPA agreed to mitigate the proposed civil penalty from $4,040,000 to $160,000. In exchange, Hall–Kimbrell agreed, *inter alia*, to pay an agreed upon settlement in the amount of $160,000. Hall–Kimbrell also certified "that, in cooperation with the Michigan Department of Public Health, it has revised [at no additional cost to the Archdiocese] the original management plans developed for the 162 schools identified in the Complaint in the Archdiocese of Detroit." Hall–Kimbrell further agreed to correct any deficiencies in any original management plans.

On December 29, 1993, Hall–Kimbrell filed a complaint in Wayne County Circuit Court in Michigan, Case No. 93–336142–CK. Hall–Kimbrell's complaint in that case essentially mirrors the claims asserted by Hall–Kimbrell in this case. Hall–Kimbrell apparently failed to properly serve the Archdiocese with that complaint. However, based upon the agreement of counsel, in exchange for the Archdiocese' agreement not to contest Hall–Kimbrell's method of service, the Archdiocese was granted an extension of time until March 4, 1994, to answer or otherwise plead in response to that complaint. The agreement

to extend the time to respond was granted in part to afford the parties an opportunity to settle the case and for the Archdiocese to obtain MDPH approval of the asbestos management plans. The Archdiocese repeatedly advised Hall–Kimbrell that if its efforts to obtain MDPH approval were unsuccessful, it would bring the State of Michigan into the lawsuit. The parties' attempts to settle that dispute upon mutually agreeable terms ultimately proved unsuccessful. On March 3, 1994, Hall–Kimbrell filed a notice of dismissal pursuant to Michigan Court Rule 2.504(A).[1] On March 4, 1994, Hall–Kimbrell filed its complaint in the case at bar.

On June 23, 1994, the Archdiocese filed a complaint in a Wayne County Circuit Court in Michigan, Case No. 94–419465 CK. That complaint essentially alleges the same cause of action disputed in the case at bar. However, in the complaint filed in Michigan state court, the Archdiocese also names the State of Michigan, the MDPH, and the director of the MDPH as defendants to the action. The complaint alleges that the MDPH, by failing to review the resubmitted asbestos management plans, has failed to satisfy its obligations under AHERA. In that case, the Archdiocese requests that the court enter an order compelling the MDPH or the State of Michigan to review the asbestos management plans it has submitted and to continue to review those plans until they are approved.

According to correspondence received by this court from counsel, it appears that the state court in Michigan has ordered "the parties to move ahead with discovery and to begin to prepare the case for trial."

### Arguments of the parties

The Archdiocese contends that it has not done any act or consummated any transaction in Kansas. Instead, the Archdiocese argues that its contact with Kansas is inconsequential and wholly insufficient to demonstrate that it has "minimum contacts" with this state. The Archdiocese also·contends that it has done nothing that it should anticipate being haled into a Kansas court. More specifically, the Archdiocese contends that it is an ecclesiastical organization based solely in Michigan, that it has no employees or agents in Kansas, that Hall–Kimbrell solicited it for business, that the contract was finalized in Michigan, that Hall–Kimbrell employees and inspectors traveled to Michigan to inspect its properties, and that it was of no concern to the Archdiocese where the tests and reports were prepared.

The Archdiocese basically advances three primary arguments in support of its motion to dismiss this action based upon improper venue or in support of its request to transfer the case to Michigan. First, the Archdiocese contends that most of the witnesses and sources of proof are located in Michigan. Second, the Archdiocese contends that Hall–Kimbrell's choice of forum should not be given credence because Kansas is not related to the location where the dispute arose and to allow this case to remain in Kansas would permit Hall–Kimbrell to succeed in a "blatant" attempt at forum shopping. Third, the Archdiocese contends that another forum, namely Michigan, exists where this action may be properly tried. Running throughout the Archdiocese' arguments is its contention that the MDPH is a necessary and indispensable party to this action. The Archdiocese contends that because this court cannot exercise personal jurisdiction over the MDPH,[2]

1. In its brief, Hall–Kimbrell indicates that it dismissed the case it filed in Michigan because "the Archdiocese was never properly served" and because settlement negotiations were unsuccessful. Hall–Kimbrell's brief also notes the convenience of the federal courthouse in Topeka, Kansas, which is located approximately 20 miles from its headquarters in Lawrence, prompted it to file the case in Kansas.

2. While not discussed by either party, the court merely notes that Eleventh Amendment immunity is also another potential obstacle to naming MDPH as a defendant in any federal court. *See Ramirez v. Oklahoma Department of Mental*

*Health,* 41 F.3d 584 (10th Cir.1994) ("It is well-established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies.").

In any event, in reaching its decision to transfer this case to the Eastern District of Michigan, the court has considered but expresses no definitive opinion upon the merits of the Archdiocese's claims against the State of Michigan, the MDPH or its director.

this case should be transferred to Michigan.[3]

In response, Hall–Kimbrell contends that it is entirely appropriate for this court to exercise personal jurisdiction over the Archdiocese. Hall–Kimbrell basically argues that the Archdiocese voluntarily entered a contract with a company whose principal place of business is Kansas, that the contract contemplated and required performance by the parties in Kansas, and that this case arises from that contact. In short, Hall–Kimbrell contends that the assumption of jurisdiction over the Archdiocese will not offend traditional notions of fair play and substantial justice.

In response to the Archdiocese' arguments regarding venue, Hall–Kimbrell denies each of the Archdiocese' arguments and contends Kansas is a proper venue and that this case should remain in Kansas. Hall–Kimbrell does not argue that Michigan would not be a proper venue under the federal venue statute, 28 U.S.C. § 1391(a). Hall–Kimbrell argues, however, that the court should give deference to its choice to bring this action in Kansas as that choice reflects the most reasonable choice of venue in this dispute. Hall–Kimbrell contends that the Archdiocese' claims against the MDPH are wholly without merit and therefore the court should give no weight to any of the Archdiocese' contentions that MDPH's presence is necessary to a complete adjudication of this case. Hall–Kimbrell also contends that if this case is transferred to Michigan, the burden on its witnesses would be equal or greater than the burden imposed upon the Archdiocese' witnesses if this case is tried in Kansas.

### Analysis

While it appears that this court has personal jurisdiction over the Archdiocese, *see Continental American Corp v. Camera Con-*

trols Corp., 692 F.2d 1309, 1312 (10th Cir. 1982); *Kiely v. The Shores Group, Inc.*, No. 93–2194–JWL, 1994 WL 544358, 1994 U.S.Dist. LEXIS 14436 (D.Kan. Sept. 1, 1994); *Lodgistix, Inc. v. Tollman–Hundley Hotels Corp.*, No. 90–1387–C, 1991 WL 241176, 1991 U.S.Dist. LEXIS 16025 (D.Kan. Oct. 31, 1991); *Marcus Food Co. v. Family Foods of Tallahassee*, 729 F.Supp. 753 (D.Kan.1990);[4] 1 Robert C. Casad, *Jurisdiction in Civil Actions* § 4.02[5] (2nd ed. 1991) ("Even where the goods or services are to be delivered or rendered outside the state, several courts have held the fact that payment is to be made in, or by a check drawn in, the forum state is enough to satisfy the statutory test.") (footnote omitted), and although it also appears that Kansas is a proper venue under 28 U.S.C. § 1391(a), *see Clemons v. Speigel*, No. 94–4092–SAC, 1994 WL 732630 (D.Kan. Dec. 27, 1994), based upon the criteria set forth below, the court is persuaded that it is appropriate to transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

### Change of Venue

Title 28, section 1404(a) provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Tenth Circuit recently summarized the rules pertaining to change of venue pursuant to 28 U.S.C. § 1404(a):

Congress enacted 28 U.S.C. § 1404(a) in 1948 "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct.

---

**3.** In addition, the Archdiocese contends that the law of Michigan will apply as the contract was executed in Michigan. Conversely, Hall–Kimbrell contends that the law of Kansas will govern this dispute. Neither party favored the court with *any* legal authority in support of their respective positions regarding the choice of law issue.

In this regard, the court simply observes that in Kansas, "[a] contract is considered 'made' when and where the last act necessary for its formation is done." *Neumer v. Yellow Freight System, Inc.*, 220 Kan. 607, Syl. ¶ 2, 556 P.2d 202

(1976). *See Gillespie v. Seymour*, 19 Kan.App.2d 754, 763, 876 P.2d 193 (1994) ("Kansas adheres to the *lex loci contractus* theory of contract interpretation: The law of the place where the contract was made governs construction of the contract.").

**4.** These cases construing the Kansas long-arm statute, K.S.A.1993 Supp. 60–308, have concluded that the nonresident's payment of funds to the Kansas resident at its Kansas offices constitutes part performance within the forum.

252, 265, 70 L.Ed.2d 419 (1981) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 613, 84 S.Ct. 805, 807–08, 11 L.Ed.2d 945 (1964)).... Although drafted in accordance with the *forum non conveniens* doctrine, the statute was intended to revise rather than merely codify the common law. Courts therefore enjoy greater discretion to transfer a cause pursuant to § 1404(a) than to dismiss the action based upon *forum non conveniens*.[n3] *Piper Aircraft,* 454 U.S. at 253, 102 S.Ct. at 264.

The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Texas E. Transmission Corp. v. Marine Office–Appleton & Cox Corp.,* 579 F.2d 561, 567 (10th Cir.1978); *Wm. A. Smith Contracting v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir.1972). But § 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit. *See Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960); *Morris v. Peterson,* 759 F.2d 809, 812 (10th Cir. 1985). Moreover, when a case is transferred under § 1404(a), the transferee court must apply the same law as applicable in the transferor court, irrespective of whether the transfer was sought by the plaintiff or defendant. *Ferens v. John Deere Co.,* 494 U.S. 516 [527–33], 110 S.Ct. 1274, 1282–84, 108 L.Ed.2d 443 (1990).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen,* 376 U.S. at 622, 84 S.Ct. at 812).

Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967).

---

n3  Section 1404(a) transfers must be distinguished from transfers carried out under 28 U.S.C. § 1406(a). In the case of § 1404(a), both the transferor and the transferee court have venue over the action; it is more efficient to prosecute the action in the latter court. Conversely, in the case of § 1406(a), the transferor court lacks venue and must transfer the action in order for it to proceed.

*Chrysler Credit Corp v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515–1516 (10th Cir. 1991) (footnote omitted); *see Hill's Pet Products v. A.S.U., Inc.,* 808 F.Supp. 774 (D.Kan. 1992) (thorough discussion of the principles governing transfer of venue pursuant to § 1404(a)).

Based upon the information and arguments presented, the court concludes that it is appropriate to transfer this case to the Eastern District of Michigan. While disputed by the parties, the court is persuaded that the Archdiocese has demonstrated, albeit narrowly, that Michigan is a more convenient forum for the majority of witnesses that will potentially be called in this case. The court is also convinced that the interests of justice are better served by transferring this case to Michigan.

In reaching this decision, the court is aware of the rule that the plaintiff's choice of forum is generally given great deference. *See Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) ("Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed.") (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir. 1972)); *M.K.C. Equipment Co. Inc. v. M.A.I.L. Code, Inc.,* 843 F.Supp. 679, 683 (D.Kan.1994) ("Generally, the plaintiff's

choice of forum is given great deference. The burden on the party seeking to overcome the preference for the plaintiff's chosen forum is significant."). The court is also aware that in many cases a transfer to another district would merely shift the burden from one party to the other, and therefore there is no benefit to transferring the case. *See, e.g., Lodgistix, Inc. v. Tollman–Hundley Hotels Corp.*, No. 90–1387–C, 1991 WL 241176, 1991 U.S.Dist. LEXIS 16025 (D.Kan. Oct. 31, 1991) (court denies defendant's request to transfer to another district where transfer would do little more than shift the inconvenience to the plaintiff).

Notwithstanding these general rules, each case must be decided on its specific facts. The court believes that the circumstances of this case override the general principles set forth above. The case at bar is somewhat unique in that the plaintiff has previously ventured to Michigan to commence a virtually identical action against the Archdiocese and is currently defending a similar action in Michigan. The reasons offered by Hall–Kimbrell for its dismissal of the case it filed in Michigan state court do not convincingly refute the Archdiocese' allegation that Hall–Kimbrell has engaged in a strategic plan something akin to forum shopping. The timing and sequence of events, coupled with the absence of a satisfactory explanation for Hall–Kimbrell's change in forum, appear to evidence a plan to exert pressure on the Archdiocese by moving the case to an apparently less convenient forum. Consequently, the court has given little weight to Hall–Kimbrell's choice of forum. *Cf., Premier Design, Ltd. v. Western Money Sys.*, No. 93–1850, 1993 WL 313506, 1993 U.S.Dist. LEXIS 13142 (E.D.Pa. Aug. 2, 1993) (district court declines to apply first-filed rule where defendant's conduct a type of forum shopping).

Nor does the court find that this is an instance where transferring this case to Michigan merely shifts the burden from the defendant to the plaintiff. Such a contention is belied by the fact that Hall–Kimbrell, by its own choosing, originally commenced this action in Michigan. Obviously, at one point in time even Hall–Kimbrell did not believe it to be too onerous a task to litigate this case in Michigan. Moreover, the court is persuaded that on balance, Michigan is a more convenient forum for the majority of witnesses.

Finally, the court believes that transferring this case may *ultimately* lead to a net savings of the court's limited resources. The district court in Michigan may be in a better vantage point to determine the best course for this case in light of the pending state case.[5]

IT IS THEREFORE ORDERED that the Archdiocese' motion to dismiss for lack of personal jurisdiction, or in the alternative, to dismiss or transfer based on the doctrine of forum non conveniens (Dk. 20) is granted in part. The court grants the Archdiocese' request to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Eastern District of Michigan.

IT IS FURTHER ORDERED that the clerk shall transmit the court file along with a copy of this order to the United States District Court for Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

---

**5.** In reaching this decision, the court has considered several other options which might better conserve the judicial resources of the federal courts and the Michigan state court. With little guidance to evaluate the merits of possible alternatives (*e.g.*, staying this case pending disposition of the Michigan state case) from the parties, the court concludes that transferring this case to the Eastern District of Michigan is the most appropriate alternative.