**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARK KILCREASE,

     Plaintiff - Appellant,

v.

DOMENICO TRANSPORTATION CO.,

     Defendant - Appellee.

No. 15-1320

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-03193-WYD-MJW)**
_____

Darold W. Killmer (Andrew McNulty with him on the brief), Killmer, Lane & Newman, LLP, Denver, Colorado, for Plaintiff-Appellant.

Paul D. Godec, Kissinger & Fellman, P.C., Denver, Colorado, for Defendant-Appellee.
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

## I.   INTRODUCTION

Mark Kilcrease is a commercial truck driver who was temporarily unable to work due to the effects of cancer. After his cancer went into remission, Mr. Kilcrease applied for a truck-driving position with Domenico Transportation Company.

Domenico rejected Mr. Kilcrease's application, and he filed suit, alleging discrimination and retaliation in violation of the Americans with Disabilities Act (ADA). The district court granted summary judgment to Domenico on both claims, and Mr. Kilcrease appeals.

We conclude the district court properly granted summary judgment on both claims. With respect to his discrimination claim, we agree with the district court that Mr. Kilcrease failed to demonstrate he was a qualified individual within the meaning of the ADA and therefore cannot establish a prima facie case of discrimination. With respect to his retaliation claim, we conclude that Mr. Kilcrease cannot show the requisite nexus between his ADA complaints and an adverse employment action. We therefore affirm the district court's grant of summary judgment to Domenico.

## II.  BACKGROUND

Mr. Kilcrease is a survivor of Acute Myeloid Leukemia (AML), a rare form of cancer. He obtained his Commercial Driver License (CDL) in 1994 and drove commercially in Colorado from 1994 until 2002. By 2004 Mr. Kilcrease was in remission from AML, and in 2006 he began actively seeking work. In October 2009, Mr. Kilcrease responded to a job posting by Domenico and filled out a pre-application questionnaire for a position as a truck driver with the company. The advertisement to which Mr. Kilcrease responded sought drivers with a Class A CDL, three years of verifiable mountain driving, no moving violations within the past three years, and the ability to drive year round in the Colorado mountains. On his questionnaire, Mr. Kilcrease stated that he had eight years of driving experience and

2

three years of mountain-driving experience. He listed no recent driving experience, instead explaining that he had been unemployed since June 2002 and was in remission from AML.

A couple of weeks later, Mr. Kilcrease received a call from Phil Domenico, who informed him that Domenico had rejected his application. According to Mr. Kilcrease, Phil Domenico explained, "the insurance company that underwrites the company's health insurance policy would not cover [Mr. Kilcrease] because of [his] prior diagnosis of AML." Mr. Kilcrease claimed he then "asked the Domenico representative, 'I am not being considered for employment because I am in remission from AML?'" and Phil Domenico "responded, 'Yes.'" Mr. Kilcrease suggested that Domenico's refusal to hire him "might fall under the Americans with Disabilities Act," but Domenico declined to reconsider its decision.

Mr. Kilcrease then filed with the Equal Employment Opportunity Commission (EEOC) a charge of ADA discrimination and retaliation against Domenico.[1] In response to the charge, Domenico claimed that it had rejected Mr. Kilcrease's application not because of any preexisting medical condition, but because he lacked three years of recent driving experience—a requirement that Phil Domenico had explained to Mr. Kilcrease was required by Domenico's auto-insurance underwriter. The EEOC issued Mr. Kilcrease a notice of right to sue, and Mr. Kilcrease filed suit

---

[1] Mr. Kilcrease also claimed in his EEOC charge that Domenico discriminated against him on the basis of age. However, his complaint in this matter includes no claim of age discrimination.

against Domenico in November 2013. Mr. Kilcrease's complaint alleged one count of discrimination under the ADA and one count of retaliation.

Domenico moved for summary judgment, arguing Mr. Kilcrease could not establish a prima facie case of ADA discrimination because he lacked three years of verifiable mountain-driving experience and therefore was not a "qualified individual" under the ADA. Specifically, Domenico referred to a company policy requiring mountain-driving experience consisting of experience driving on a 6% grade sustained for one mile or more and argued that Mr. Kilcrease's employment history demonstrated he lacked such experience. Domenico also moved for summary judgment on Mr. Kilcrease's retaliation claim, arguing that Mr. Kilcrease could not establish a retaliation claim because Domenico made the decision not to hire him before he asserted any rights under the ADA.

The district court agreed with Domenico that the undisputed facts demonstrated Mr. Kilcrease had less than three years of mountain-driving experience as defined by Domenico and therefore was not a "qualified individual" under the ADA. The district court also concluded that because Mr. Kilcrease did not raise any ADA concerns until after Domenico had made the decision to not hire him, Mr. Kilcrease could not show the requisite causal connection between his protected activity and an adverse employment decision. The district court accordingly granted Domenico's motion for summary judgment on both claims. Mr. Kilcrease timely appealed.

### III. ANALYSIS

Mr. Kilcrease challenges the district court's grant of summary judgment on his claims of ADA discrimination and retaliation. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's grant of summary judgment de novo, review[ing] the evidence in the light most favorable to the nonmoving party." *Clark v. Edmunds*, 513 F.3d 1219, 1221–22 (10th Cir. 2008) (alteration in original) (internal quotation marks omitted).

### A. *The District Court Properly Granted Summary Judgment on Mr. Kilcrease's ADA Discrimination Claim.*

Mr. Kilcrease first challenges the district court's grant of summary judgment to Domenico on his claim of ADA discrimination. The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C § 12112(a). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (internal quotation marks omitted). Here, Domenico's motion for summary judgment, and the district court's grant of that motion, focused exclusively on whether Mr.

5

Kilcrease could establish the second element of his claim: that he was a "qualified individual" within the meaning of the ADA. We accordingly begin our analysis there.

The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "As a condition to performing the essential functions of an employment position, however, an individual must first satisfy 'the requisite skill, experience, education and other job-related requirements of the employment position.'" *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001) (quoting 29 C.F.R. § 1630.2(m)).[2]

The dispute in this case centers on Domenico's requirement that a driver have three years of verifiable mountain-driving experience, which it defines as experience driving routes that include grades of 6% or more sustained for at least a mile (the Mountain-Driving Requirement). The district court concluded Mr. Kilcrease did not put forward evidence showing that he had three years of experience to satisfy the Mountain-Driving Requirement. Because Mr. Kilcrease lacked the requisite experience, the district court concluded he was not a qualified individual under the ADA and therefore could not establish a prima facie claim of ADA discrimination.

Mr. Kilcrease challenges the district court's qualified-individual ruling on three bases. First, he argues it was improper for the district court to consider his

---

[2] The EEOC's regulations regarding ADA claims are instructive because "our disability-discrimination caselaw explicitly incorporates the EEOC's regulations." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 884 (10th Cir. 2015).

qualifications at the prima facie stage, relying on this court's decision in *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992). Second, he argues the Mountain-Driving Requirement was not an "essential function" of the job because it was not uniformly enforced.[3] Third, Mr. Kilcrease argues that, in any event, disputed issues of fact preclude summary judgment on whether he satisfied the Mountain-Driving Requirement.

1. ***Kenworthy* does not bar consideration of whether Mr. Kilcrease is a qualified individual.**

Mr. Kilcrease first contends the district court erred by even considering whether Mr. Kilcrease satisfied the Mountain-Driving Requirement. He argues *Kenworthy* and its progeny foreclose consideration of a prospective employee's qualifications at the prima facie stage of a discrimination claim. We disagree. Neither *Kenworthy* nor the other cases relied on by Mr. Kilcrease relieve a plaintiff of the obligation to present "credible evidence that she possesses the objective qualifications necessary to perform the job at issue." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000). Thus, consideration of a plaintiff's qualifications at the prima facie stage is not only proper, but necessary.

---

[3] While Mr. Kilcrease's opening brief raises this point only in support of his argument that Domenico's stated reasons for its hiring decision were pretextual, the district court understood this argument to relate also to the question of whether the Mountain-Driving Requirement is an essential function of the job, and it analyzed the claim through that lens. In light of the district court's approach, we give Mr. Kilcrease the benefit of the doubt and consider this argument as a component of his challenge to the district court's essential-function ruling.

7

ADA discrimination claims are generally subject to the *McDonnell Douglas* burden-shifting framework adapted from Title VII discrimination caselaw:

> Under that analysis, a plaintiff carries the burden of raising a genuine issue of material fact on each element of his prima facie case. If plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. If defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual.

*Davidson*, 337 F.3d at 1189 (citation omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

In *Kenworthy*, we held it improper at the prima facie stage for the district court to credit an employer's explanation for declining to promote an employee. There, a warehouse accounting clerk filed suit against her employer after she was not promoted to a supervisory position and was later terminated. 979 F.2d at 1464. She contended, among other things, that her employer failed to promote her based on her sex and national origin. *Id.* at 1469. After a bench trial, the district court found against the plaintiff on her failure-to-promote claims, concluding she had failed to establish a prima facie case of discrimination. *Id.* In reviewing the district court's decision, we noted the district court "never found that Ms. Kenworthy was not qualified" but instead improperly credited the employer's evidence that the employee actually promoted to the supervisor position had qualifications that "marginally surpassed the plaintiff's qualifications." *Id.* We concluded that consideration of the employer's reasons for an adverse action is premature at the prima facie stage, explaining that such evidence is properly considered only in addressing whether the

8

employer's reasons are legitimate or pretextual. *Id.* at 1470. We ultimately affirmed, however, concluding that despite the district court's statement that the plaintiff had failed to establish a prima facie case, the district court nevertheless properly considered her claim under the *McDonnell Douglas* framework. *Id.*

While *Kenworthy* holds that courts may not consider the employer's claim that an employee was less qualified than the employee promoted or hired, it does not, contrary to Mr. Kilcrease's claims, foreclose all consideration of a plaintiff's qualifications. Indeed, *Kenworthy* specifically requires a plaintiff to establish her qualifications with "credible evidence that she was qualified for the position she sought." *Id.* Consideration of whether a plaintiff has met that burden is therefore appropriate at the prima facie stage.

But "[t]he relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought." *EEOC*, 220 F.3d at 1193. (emphasis omitted). Thus, to establish a prima facie case, the employee need only put forward credible evidence that he meets the employer's objective requirements necessary to perform the job. *Id.* at 1193. A failure to satisfy either subjective criteria, or objective qualifications "that have no bearing on an applicant's ability to perform the job sought," cannot be used to defeat a plaintiff's prima facie case. *Id.* at 1194; *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n.11

9

(10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Mr. Kilcrease argues that the Mountain-Driving Requirement should be deemed a subjective qualification because "Domenico's own application of the policy is shifting and inconsistent."[4] In support of this claim, Mr. Kilcrease argues "Phil and Vic[tor] Domenico utilize conflicting standards as to what constitutes 'mountain driving' experience" that differ from the 6% grade standard asserted by Domenico. Specifically, Mr. Kilcrease contends Phil Domenico "considers drivers who have experience driving in a high wind environment, such as across Nebraska, as having driving experience that would satisfy Domenico's alleged 'mountain driving' qualification." But Mr. Kilcrease misreads Phil Domenico's testimony. He testified not that experience with high-wind driving would satisfy the Mountain-Driving Requirement, but that the Mountain-Driving Requirement was mandatory even for drivers assigned less mountainous eastern routes, because they would encounter high-wind situations that would require similar skills to mountain driving. Thus, Phil Domenico's testimony does not support Mr. Kilcrease's claim.

Mr. Kilcrease next directs us to Victor Domenico's deposition testimony that he would consider the route from Denver to Laramie to be mountain driving although

---

[4] He also contends that whether an application satisfies the Mountain-Driving Requirement is decided "on an ad hoc basis" and "based on subjective criteria by the interviewer." However, he provides no record support for this assertion, and we therefore do not address this claim further. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (explaining that an issue is inadequately briefed, and therefore waived, if raised only through "conclusory allegations with no citations to the record").

10

that route has a 6% grade "probably for a couple hundred yards" rather than sustained for a mile. But Victor Domenico's statement that he would consider a certain route to be mountain driving does not demonstrate that Domenico has applied a shifting or subjective standard to hiring decisions. Although Victor Domenico testified as to what he would hypothetically do, Mr. Kilcrease has put forward no evidence that Domenico actually hired any driver who did not satisfy the sustained 6% grade standard of the Mountain-Driving Requirement. Absent some evidence to show Domenico actually *applied* the Mountain-Driving Requirement in a subjective fashion, we are not convinced that consideration of this qualification was inappropriate at the prima facie stage.

In sum, we reject Mr. Kilcrease's argument that consideration of his mountain-driving experience was inappropriate at the prima facie stage. *Kenworthy* does not bar consideration of objective, job-related qualifications, and Mr. Kilcrease has not demonstrated Domenico applied the Mountain-Driving Requirement in a subjective fashion.

2. **The District Court Did Not Err in Concluding the Mountain-Driving Requirement was Essential.**

We next consider Mr. Kilcrease's claim that the Mountain-Driving Requirement was not an "essential function" or requirement of the job. Essential functions of a job are those that "bear more than a marginal relationship to the job at issue." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 887 (10th Cir. 2015) (internal quotation marks omitted). In evaluating whether a job requirement is

11

essential, courts place "considerable weight on an employer's judgment concerning a particular job's 'essential' functions." *Id.* at 888. Because it is the employer's role to "describe[] the job and functions required to perform that job," we "will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Id.* (internal quotation marks omitted). "Evidence of whether a particular function is essential to a job includes (but is not necessarily limited to) (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the consequences of not requiring the incumbent to perform the function, and (4) the current work experience of incumbents in similar jobs." *Id.* at 887. Once the employer has come forward with evidence that a job function or requirement is essential, the plaintiff bears the burden to dispute that evidence or otherwise show that the function or requirement is nonessential.[5] *Id.* at 893.

In support of its position that the Mountain-Driving Requirement is an essential function, Domenico introduced evidence that a requirement of three years of verifiable mountain-driving experience was contained in the advertisement to which Mr. Kilcrease responded and that, by company policy, that meant experience driving routes including grades of 6% sustained for a mile. Domenico introduced evidence

---

[5] Although we have recognized that "'qualifications' and 'functions' are in some sense distinguishable terms," our caselaw has generally analyzed job requirements—"be they listed as skills, qualifications, or certifications"—under the "essential function" rubric. *See Hawkins*, 778 F.3d at 895–96 (rejecting claim that district court improperly conflated job qualifications and essential functions and collecting cases applying the "essential function" inquiry to certification and training requirements).

that such experience was necessary for safety because the "vast majority" of its routes at the time involved mountain driving. Finally, Victor Domenico averred that Domenico hired six drivers in October 2009—the same month Mr. Kilcrease submitted his pre-application questionnaire—each of whom had more than three years of mountain-driving experience. The district court concluded the undisputed evidence demonstrated the Mountain-Driving Requirement was essential to the job Mr. Kilcrease sought.

In challenging the district court's ruling, Mr. Kilcrease firsts argues the Mountain-Driving Requirement is not essential because it was an unwritten policy. But Mr. Kilcrease cites no authority for the proposition that a job requirement contained on the face of a job description cannot be essential merely because it has not been reduced to a written company policy. Accordingly, we are not persuaded that Domenico's failure to formally memorialize the Mountain-Driving Requirement in writing renders that job requirement nonessential.

Next, Mr. Kilcrease argues the Mountain-Driving Requirement is nonessential because it "was not applied across the board to all candidates." "The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement." *Tate*, 268 F.3d at 993. Mr. Kilcrease

contends that Domenico hired two drivers who did not satisfy the Mountain-Driving Requirement: Rubin Pete and John Presho.[6]

    a. *Rubin Pete*

Domenico hired Rubin Pete in October 2009, the same month Mr. Kilcrease submitted his pre-application questionnaire. Phil Domenico was asked in his deposition whether Mr. Pete had the requisite mountain-driving experience when he was hired. Phil Domenico could not remember interviewing Mr. Pete, and was unsure, based on his application materials, whether certain aspects of Mr. Pete's experience required mountain driving. However, he stated that "[s]omebody probably interviewed this guy and asked about these things and was satisfied with the answers." Domenico submitted to the district court a declaration from Mr. Pete explaining that the mountain routes he drove for D.G. Coleman, Mile Hi Frozen Foods, and White Farms Trucking—for which Mr. Pete drove three months, thirteen months, and twenty-two months, respectively—all required driving on a 6% grade sustained for at least a mile. Mr. Kilcrease has identified no evidence to dispute that Mr. Pete satisfied the Mountain-Driving Requirement at the time Domenico hired him.

---

[6] Mr. Kilcrease also asserts Victor Domenico was hired without the requisite mountain-driving experience. But the portions of the record cited by Mr. Kilcrease do not support the claim that Domenico hired Victor Domenico without three years of mountain-driving experience. To the extent Mr. Kilcrease sought to reassert on appeal the challenge to *Phil* Domenico's driving experience he raised in his summary-judgment briefing, the record discloses only that *Phil* Domenico was hired without *recent* commercial driving experience, a qualification that is not at issue with respect to whether Mr. Kilcrease is a qualified individual.

14

b. *John Presho*

Domenico hired Mr. Presho in January 2009, nine months before Mr. Kilcrease submitted his pre-application questionnaire. In his deposition, Phil Domenico was unfamiliar with Mr. Presho and did not believe he had interviewed or hired him, explaining that the notes regarding employment verification were not in his handwriting. When asked if Mr. Presho's application materials showed that he had the requisite experience, Phil Domenico agreed that the materials presented to him in the deposition did not reflect three years of mountain-driving experience. But he also explained that whether particular work experience involves mountain driving is "part of what you would ask during the interview."[7] Victor Domenico similarly averred that "the company would learn far more about an applicant during the interview and gain information about an applicant beyond what was stated on his application, including additional experience." And Phil Domenico testified that, during the period he was responsible for hiring, he adhered to the Mountain-Driving Requirement and was unaware of any drivers hired by Domenico who did not satisfy that requirement.[8]

---

[7] It is unclear precisely what documents were before Phil Domenico at the time he made this statement, as the deposition exhibits are not contained in the record on appeal. Although the record includes a summary-judgment exhibit entitled "Presho Application Materials," it contains no identification as a deposition exhibit, and the exhibit number does not correspond to that of the relevant deposition exhibit.

[8] Domenico asserts in its appellate brief that "[a]s a matter of undisputed fact, Presho actually had six years of mountain driving experience when hired by Domenico." But the record does not support this claim. Instead, the relevant exhibits and Victor Domenico's affidavit establish that Mr. Presho had six years total driving experience but include nothing about his mountain-driving experience.

In arguing that Mr. Presho did not meet the Mountain-Driving Requirement, Mr. Kilcrease cites exclusively to Phil Domenico's deposition testimony. But we do not agree with Mr. Kilcrease's contention that Phil Domenico's deposition testimony establishes that Mr. Presho lacked the requisite experience. Rather, Phil Domenico's testimony establishes only that he did not interview Mr. Presho and therefore *did not know* whether he had three years of mountain-driving experience, and that such experience was not reflected on the materials presented to him in his deposition. Nothing in that testimony affirmatively supports Mr. Kilcrease's contention that Mr. Presho was unqualified, and Mr. Kilcrease has identified no other record evidence from which a factfinder could conclude Mr. Presho lacked the requisite mountain-driving experience. Faced with Domenico's evidence that it uniformly applied the Mountain-Driving Requirement and had not hired unqualified drivers, Mr. Kilcrease bore the burden to come forward with evidence sufficient to create a factual dispute on that issue. *Hawkins*, 778 F.3d at 893. His failure to do so is fatal to his claim that Mr. Presho did not have the requisite mountain-driving experience when Domenico hired him.

At the summary-judgment stage, Mr. Kilcrease bore the burden to show that Domenico did not uniformly apply the Mountain-Driving Requirement, or, at the very least, to identify a disputed issue of fact on this point. *Id.* Because he failed to do so, we cannot conclude the district court erred in rejecting his argument that Domenico failed to apply the Mountain-Driving Requirement to Mr. Rubin or to Mr. Presho. And because Mr. Kilcrease has not demonstrated that Domenico failed to

16

uniformly apply the Mountain-Driving Requirement or that the requirement is otherwise nonessential to the job, the district court did not err in concluding, based on the undisputed facts, that the Mountain-Driving Requirement was an essential function of the job.

3. **Mr. Kilcrease Lacks Three Years of Mountain-Driving Experience.**

Having determined that the district court properly concluded the Mountain-Driving Requirement is "essential," we next consider Mr. Kilcrease's argument that he put forward sufficient evidence to preclude summary judgment on the issue of whether he satisfied that requirement. However, Mr. Kilcrease conceded in his deposition that he did not meet Domenico's requirement of three years mountain-driving experience. When questioned about his driving experience, Mr. Kilcrease testified that he drove routes including 6% grades only with C.R. England and ProDrivers, for whom he drove approximately two months and six months, respectively. When asked how he arrived at three years of mountain-driving experience on his pre-application questionnaire, Mr. Kilcrease stated that he "just miscalculated, mis-added all the months [he] drove in the mountains—or weeks." When asked how much mountain-driving experience he would put "if [he] were filling this out today," Mr. Kilcrease responded, "Maybe a year and a half." And when asked whether he thought he had the qualifications listed in the Domenico job

posting, he stated "everything except the three years" because he "miscalculated the years" and "it was a year and a half, mainly."[9]

Moreover, Mr. Kilcrease's argument on this point fails to meaningfully address whether any of his driving experience satisfies the Mountain-Driving Requirement as articulated by Domenico. Instead, Mr. Kilcrease recounts his truck-driving experience and states that "a reasonable juror could conclude, based on the above-listed experience, that Kilcrease's experience satisfied Domenico's alleged mountain driving policy, if such a policy even exists." But absent some evidence that Mr. Kilcrease had the requisite three years of experience driving routes involving sustained 6% grades, a jury could only speculate as to whether Mr. Kilcrease's experience satisfied the Mountain-Driving Requirement.[10]

---

[9] At oral argument, Mr. Kilcrease argued for the first time that *McKennon v. Nashville Banner Publishing Co.*, 512 U.S. 352 (1995), precluded Domenico from challenging his prima facie case with evidence it acquired after it made the decision not to hire him—such as this testimony from Mr. Kilcrease's deposition. But Mr. Kilcrease conceded that he had not made this argument in the district court. "If a claimant fails to present an issue to the district court, the issue is forfeited unless compelling reasons dictate that the forfeiture be excused." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Because Mr. Kilcrease offered no justification for his failure to preserve this argument, it is forfeited on appeal. *Id.*

[10] Mr. Kilcrease contends that, notwithstanding Domenico's Mountain-Driving Requirement, his experience is sufficient because Phil Domenico "considered routes that run between Denver, Littleton, and Greeley to be 'mountain driving.'" But, again, the record does not support this claim. In discussing Mr. Pete's experience at his deposition, Phil Domenico stated that he considered driving for Mile Hi Frozen Foods to constitute mountain driving because "they go up into the mountains. They go north. They go South." While Mr. Kilcrease's counsel observed that Mile Hi "also go[es] to Littleton and Greeley" from Denver, Phil Domenico never testified that he considered those routes to constitute mountain driving. Thus, Mr. Kilcrease's argument that he could satisfy "Phil Domenico's definition of mountain driving"

18

Given Mr. Kilcrease's concession that he had only a year and a half of mountain-driving experience, and the lack of evidence that he had the requisite three years of experience to satisfy the Mountain-Driving Requirement, he cannot establish a disputed issue of fact on this point. Because Mr. Kilcrease has not shown he was a qualified individual, the district court properly granted summary judgment to Domenico on Mr. Kilcrease's ADA discrimination claim.

**B.** ***The District Court Properly Granted Summary Judgment on Mr. Kilcrease's Retaliation Claim.***

Mr. Kilcrease also challenges the district court's grant of summary judgment to Domenico on his retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). The district court granted summary judgment to Domenico on the basis that Mr. Kilcrease did not engage in protected activity until after Domenico had already made the decision not to hire Mr. Kilcrease, and, as a result, he could not establish a prima facie case of retaliation. The district court reasoned that "[t]he occurrence of the adverse employment action prior to the alleged protected activity renders a plaintiff unable to bring a retaliation claim." (Quoting *Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1305 (N.D. Okla. 2008).)

---

because he drove routes between Denver, Littleton, and Greeley and "similar routes along I-25" is unavailing.

Mr. Kilcrease challenges the district court's decision, arguing that Domenico's "fail[ure] to reconsider Mr. Kilcrease's qualifications after his protected activity and deciding not to hire Kilcrease" constitutes a "second refusal to hire." But Mr. Kilcrease provides no legal support for the idea that an employer's refusal to revisit an adverse employment decision—a decision made before the employee engaged in protected activity—can constitute retaliation.

Our decision in *Sabourin v. University of Utah*, 676 F.3d 950 (10th Cir. 2012), is instructive. There, an employee was laid off after "going over [his supervisor's] head to obtain FMLA leave," and he asserted that the supervisor's decision to eliminate his position was in retaliation. *Id.* at 958. The district court granted summary judgment to the employer, and the employee appealed. The undisputed evidence showed that the plaintiff's supervisor had submitted a request to eliminate the position five days before she learned the plaintiff was seeking FMLA leave. *Id.* The plaintiff argued for various reasons that the decision to terminate his position "must have still been tentative" until he was actually notified of his termination, which did not occur until after he had begun his FMLA leave. *Id.* at 959. But we concluded the undisputed facts disclosed no "hesitation or reconsideration" on the part of his supervisor and determined the evidence was "unequivocal that the reduction-in-force decision had already been made" at the time the request to eliminate the position was submitted. *Id.* Accordingly, we held there was "no genuine issue that the reduction in force was wholly independent of [the plaintiff's] request for FMLA leave," and therefore "the reduction in force was not related to the

20

exercise or attempted exercise of [the plaintiff's] FMLA rights." *Id.* (internal quotation marks omitted). We concluded the plaintiff's retaliation claim therefore failed for lack of a causal connection between the protected activity and the adverse employment action, and we affirmed the district court's grant of summary judgment. *Id.*

Here, Mr. Kilcrease's affidavit and deposition testimony establish that Phil Domenico called and told him that Domenico would not consider him for a position with the company. When Mr. Kilcrease protested that Domenico's refusal to hire him might implicate the ADA, Phil Domenico "made no further inquiries regarding [his] qualifications, or whether [his] present health condition would allow [him] to perform the functions of the job." Rather "[t]hat was the end of the call." In his opposition to summary judgment, Mr. Kilcrease admitted that Phil Domenico had already made the decision not to hire him before the call. And, critically, Mr. Kilcrease did not dispute Domenico's factual assertion that

> [Mr.] Kilcrease's mention of the ADA or his threat of a lawsuit did not cause Domenico to change its course of action with him as Domenico had already decided to not move him forward in the hiring process, nor did it cause Domenico to take any additional action against Kilcrease.

Rather, Mr. Kilcrease admitted that "Phil Domenico made no inquiries into Mr. Kilcrease's qualifications or whether his present health condition would allow him to perform the functions of the job and instead just ended the phone call."

Based on Mr. Kilcrease's admissions and failure to dispute Domenico's factual assertions, his retaliation claim cannot succeed. The undisputed facts demonstrate

21

that Domenico had decided not to hire Mr. Kilcrease before contacting him. Mr. Kilcrease has not put forth any evidence that this decision was "tentative" or subject to "reconsideration," such that Domenico's decision not to hire him could be understood as a response to his assertion of his rights under the ADA. *See Sabourin*, 676 F.3d at 959. Because Domenico had made an "unequivocal" decision not to hire him before Mr. Kilcrease asserted his ADA rights, and because Mr. Kilcrease has not disputed that Domenico did not change its course of action in response to that assertion, Mr. Kilcrease cannot establish the requisite causal connection between his protected activity and the adverse employment action. *Id.* He therefore cannot show that Domenico's decision not to hire him was made in retaliation for his assertion of rights under the ADA. The district court correctly granted summary judgment to Domenico on this claim.

## IV.  CONCLUSION

The undisputed facts show that Domenico's requirement of mountain-driving experience is an essential function of the job Mr. Kilcrease sought. Mr. Kilcrease failed to raise a genuine issue of fact material to the question of whether he satisfied that requirement. The district court therefore properly granted summary judgment on the basis that Mr. Kilcrease failed to establish he is a qualified individual under the ADA. The district court also properly granted summary judgment to Domenico on Mr. Kilcrease's retaliation claim because Domenico took no adverse employment action against Mr. Kilcrease subsequent to his assertion of rights under the ADA. We affirm the district court's grant of summary judgment to Domenico.

22