FILED
United States Court of Appeals
Tenth Circuit

June 8, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANNA MARIE PITTMAN,

    Plaintiff - Appellant,

v.

AMERICAN AIRLINES, INC.,

    Defendant - Appellee.

No. 16-5129
(D.C. No. 4:14-CV-00728-CVE-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BRISCOE**, and **PHILLIPS**, Circuit Judges.
_____

    Anna Marie Pittman appeals the summary judgment entered in favor of her employer on her claims of employment retaliation on the basis of race, in violation of 42 U.S.C. § 1981, and disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(a) (ADA). She has abandoned all other claims for relief. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

We provide a brief factual summary to frame the issues presented for review. Ms. Pittman is an African-American with dyslexia, hearing problems, and a resultant learning disability, who worked for the defendant airline (employer) for many years as a building cleaner. In 2012 the employer outsourced all of the building-cleaner positions, but negotiated with its union to allow those holding outsourced building-cleaner jobs to move into maintenance support positions. Consequently, Ms. Pittman and five other former building cleaners applied for jobs as hazardous waste maintenance workers. To be eligible for that position, the applicant was required to know how to safely clean up chemical spills by accessing an online database and reading the cleanup-instructions for specific chemicals. The employer provided classroom instruction and training to the six applicants, including Ms. Pittman. As part of the training, the applicants shadowed senior hazardous waste maintenance support employees for six months. After 180 days in the position, the applicants were required to pass a test to demonstrate their competence. This test was known as the 180-day test.

During the test-preparation period, Ms. Pittman complained to her supervisor that she was not being adequately prepared for the test because she was a black woman. She did not seek accommodation for dyslexia or hearing problems. Ms. Pittman received at least two weeks' notice of her test date, December 4, 2013. The 180-day test was administered orally. Even so, she was still required to read and understand the online clean-up instructions. She did not pass the test because she

2

was not able to utilize the online database to find clean-up instructions for a specific chemical or explain the proper remediation technique.

Ordinarily, an employee who failed the 180-day test would return to her prior job. But because Ms. Pittman's prior job had been outsourced, she could not return to it, so her employment was terminated. The collective bargaining agreement between Ms. Pittman's union and the employer required employees to bid for jobs by seniority. Notwithstanding this rule, the union and the employer arranged for another position suitable for Ms. Pittman. A settlement agreement memorialized the arrangement, and Ms. Pittman was asked to sign it. She did so, and began working at the new position on January 21, 2014.

Ms. Pittman subsequently filed the underlying lawsuit alleging the employer discriminated and retaliated against her on the bases of race, gender, and disability. The district court rejected the employer's argument that the settlement agreement precluded Ms. Pittman's claims, ruling that the agreement "did not constitute a knowing and voluntary waiver of all of plaintiff's claims against defendant resulting from her termination." Aplt. App. Vol. 4, at 406. The court nevertheless granted summary judgment to the employer on the discrimination and retaliation claims. Ms. Pittman appeals, pursuing only her race and ADA retaliation claims.

## II.    GOVERNING LAW

We review de novo the district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of Ms. Pittman as the nonmoving party. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir.

3

2014).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material only if it might affect the outcome of the suit under the governing law.  And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1186 (10th Cir. 2016) (internal quotation marks omitted).

The ADA and § 1981 prohibit retaliation based on disability and race.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2529 (2013) (§ 1981); *Foster*, 830 F.3d at 1186 (ADA).  Where, as here, the plaintiff relies on circumstantial evidence of retaliation, the following three-step analysis applies: (1) the plaintiff must establish a prima facie case of retaliation; (2) the employer must provide a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must demonstrate "at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual." *Smothers*, 740 F.3d at 538.  "The plaintiff may establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (internal quotation marks omitted).

4

To establish a prima facie case of retaliation, Ms. Pittman was required to show: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) there is a causal connection between the opposition and the adverse action. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (§ 1981); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (ADA).

## III. DISCUSSION

### A. ADA Retaliation

As part of her prima facie burden, Ms. Pittman was required to show that she engaged in "protected activity" by demonstrating that she made "an adequate request for an accommodation sufficient to qualify as protected activity." *Foster*, 830 F.3d at 1187; *see id.* at 1188 ("[R]ecogniz[ing] that a request for accommodation can constitute protected activity supporting a retaliation claim."). Such a request "must make clear that the employee wants assistance for his or her disability." *Id.* at 1188 (internal quotation marks omitted). "Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct, as required by statute." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) (citing § 12203(a)).

Ms. Pittman argues that she engaged in protected activity in the following ways: (1) by presenting a doctor's note to an unidentified person or department in approximately 2000, allegedly stating she had a learning disability; (2) by requesting oral administration of exams and additional exam preparation in the spring and fall of

5

2013; and (3) by presenting a doctor's note after she failed the 180-day test stating she had dyslexia and required oral exams. Ms. Pittman has presented no evidence that any requests for oral testing or other accommodation were due to a disability. Her reliance on a vague doctor's note submitted in approximately 2000 is not sufficiently direct and specific to constitute notification of a disability. Moreover, the pages of the appellate appendix on which she relies to support this point have been redacted to obscure the operative testimony. *See* Aplt. App. Vol. 3, at 252. But even crediting her argument that the note stated she had dyslexia and hearing loss and that she required oral testing, she has cited to no evidence that she informed anyone involved in administering tests or in terminating her employment that she had a disability.

Ms. Pittman relies on *Robertson v. Las Animas County Sheriff's Department*, 500 F.3d 1185, 1196-97 (10th Cir. 2007), to argue that the employer knew of her disability so her failure to inform anyone that her requests for oral testing and additional training were based on a disability was immaterial. In *Robertson* this court reversed the summary judgment on the plaintiff's Title II ADA claim (applicable to public entities) because the facts established that a defendant knew the plaintiff had difficulty hearing and when he was booked into jail, the officers inventoried hearing aid batteries. *Id.* Ms. Pittman claims, without citation to the record, that Mr. Beaston was her manager in 2007, so he was aware of a note, signed by David Marks as supervisor and placed in her file, stating she was "unable to complete [a performance advisory] due to learning disability," Aplt. App. Vol. 3, at 302-03. No reasonable

6

juror could find that this note notified the employer that she was requesting

accommodation for a disability in preparation for the 180-day test in December 2013.

*See Twigg*, 659 F.3d at 1009 (affirming summary judgment because no reasonable

juror could find a basis for plaintiff's claim).

In addition, the doctor's note dated December 17, 2013, submitted after

Ms. Pittman failed the 180-day test, could have been neither a request for a

reasonable accommodation of a disability nor the basis of unlawful retaliation

because Ms. Pittman's employment had already been terminated. *See Kilcrease v.*

*Domenico Transp. Co.*, 828 F.3d 1214, 1226 (10th Cir. 2016) (holding where the

adverse employment decision was made before the protected activity occurred, the

plaintiff "cannot establish the requisite causal connection between his protected

activity and the adverse employment action").[1]  Therefore, we affirm the district

court's grant of summary judgment to the employer on Ms. Pittman's ADA

retaliation claim.

## B. Race Retaliation

Ms. Pittman also contends she engaged in protected opposition to race

discrimination when she complained to her supervisor during the six-months training

period leading up to the 180-day test that she was not being adequately prepared for

the test because she is a black woman.  Thus, she satisfied the first element of a

---

[1] Ms. Pittman argues that the settlement agreement itself was retaliatory because she received no money for signing it.  We fail to see how arranging with her union to find her an alternate position after her original position had been outsourced and she failed the 180-day test was retaliatory.

7

prima facie case—she engaged in protected opposition to discrimination.[2]  She also satisfied the second element—a reasonable employee would have found termination of her employment materially adverse.  But she did not establish the third element.

For the third element of a prima facie case—a causal connection between the opposition and the adverse action—Ms. Pittman relies on the temporal proximity between her opposition to race discrimination and the adverse employment action.  She maintains that a time lapse as long as six weeks between the protected conduct and the adverse employment action can support an inference of unlawful retaliation, citing *Ramirez v. Oklahoma Department of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding time span of one and one-half months between protected activity and adverse employment action did not warrant dismissal of retaliation claim), *overruled on other grounds by Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1194-97 (10th Cir. 1998).  But Ms. Pittman testified that she could not remember when she complained that she was not being adequately prepared for the 180-day test.  Aplt. App. Vol. 3, at 234 (the operative language is redacted, but the content is apparent from the context).  Consequently, she failed to make out a prima facie case of race retaliation.

---

[2] The employer contends that Ms. Pittman did not have an objectively reasonable belief that she was opposing race discrimination.  We, like the district court, assume that she did.  *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015-16 (10th Cir. 2004) ("A plaintiff need not convince the jury that his employer had actually discriminated against him; he need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory.").

## C. Pretext

Even if Ms. Pittman satisfied the prima facie showings for race and disability retaliation, she failed to establish that the reason for terminating her employment—her job as a building cleaner had been outsourced and she failed the 180-day test so was ineligible for the hazardous-waste-maintenance position—was a pretext for unlawful retaliation. Ms. Pittman asserts that she established pretext in various ways.

First, she claims that she was told failing the 180-day test was a non-terminable event. She testified that her union representative, not management personnel, told her this. Aplt. App. Vol. 3, at 228. Even so, Ms. Pittman points to no evidence requiring the employer to find her another position, given that her former job had been outsourced.

Ms. Pittman also claims that the employer required her to take the 180-day test while she was still under the sedation effects of a colonoscopy, and this was evidence of pretext. But again, she has not cited to any record evidence that she told anyone of her condition or requested to postpone the test. Our review of the record reveals that she testified that she told "quite a few people" she did not want to take the test on December 4, but did not say it was because she was still feeling the effects of the sedation. Aplt. App. Vol. 3, at 243.

Ms. Pittman also relies on an email chain among the employer's personnel created shortly after her 180-day-test failure, which she claims demonstrates animus toward her. She characterizes the emails follows: Mr. Beaston said he did not want to "get stuck with her" and canceled her interim employment one day after he

9

indicated that he would be a "good team player" and attempt to find her another job, Aplt. App. Vol. 3, at 312; Mr. Nelson issued a directive to find her interim employment following her test failure, but canceled the directive one day later; and Mr. Voss advocated proactively pushing her off the payroll and indicated there were "hiccups" in terminating her, *id.* at 310. Contrary to Ms. Pittman's position, however, the email chain among the employer's personnel does not suggest that the stated reason for terminating her was pretextual. No reasonable juror could conclude that these statements made after Ms. Pittman failed the 180-day test and her employment was to be terminated cast doubt on the employer's legitimate non-discriminatory reason for terminating her employment.

Next, Ms. Pittman proffers as evidence of pretext the employer's failure to engage in the interactive process based on her submission of the December 2013 doctor's note, and its failure to follow its own internal ADA policy requiring assistance in securing alternative employment for her. "[B]efore an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1315-16 (10th Cir. 2017) (internal quotation marks omitted). Again, the operative portion of the doctor's note was redacted, but even assuming it says Ms. Pittman has dyslexia, the note says merely that she has dyslexia, "only oral Testing no written Exams," Aplt. App. Vol. 3, at 305. No reasonable juror could find that merely submitting this brief doctor's note after Ms. Pittman had already failed the 180-day

10

test was sufficient to trigger the employer's duty to engage in the ADA interactive process and thus render the employer's reasons for terminating her unworthy of belief.

Ms. Pittman further argues that the employer's retaliatory intent is evidenced by its decision to keep her in a "financial limbo," Aplt. Opening Br. at 30, by preventing her from collecting unemployment benefits during the six weeks her union was negotiating an exception to the collective bargaining agreement to place her in an alternate position. She alleged she was denied benefits because the employer showed her as still on the payroll. Although Ms. Pittman included this claim in her complaint, she made only brief mention of unemployment benefits in her opposition to summary judgment (and did not argue it in her post-judgment motion), and thus did not bring it to the district court's attention or alert the employer to address it. Consequently, the district court did not rule on it.

On appeal, Ms. Pittman cites only to her complaint, which is not evidence. Our review of the record reveals that she testified that she applied for unemployment benefits, but was unable to receive them because "[t]hey said . . . I was still employed." Aplt. App. Vol. 3, at 249. We decline to address this argument for two reasons: (1) we deem it waived, *see Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) ("An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling."); and (2) the explanation for denying benefits is inadmissible hearsay, *see Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) ("Hearsay testimony that would

11

not be admissible at trial is not sufficient to defeat a motion for summary

judgment.").

Finally, Ms. Pittman contends that requiring her to sign the settlement

agreement constituted anticipatory retaliation. "[T]his form of preemptive

retaliation" refers to "[a]ction taken against an individual in anticipation of that

person engaging in protected opposition to discrimination." *Sauers v. Salt Lake Cty.*,

1 F.3d 1122, 1128 (10th Cir. 1993). Ms. Pittman speculates that the employer was

concerned that she was "building a defense," Aplt. Opening Br. at 36, and therefore

made her sign the "one-sided" agreement, *id.* She points to no evidence to support

this claim. No reasonable juror could conclude that the purpose of the settlement

agreement negotiated between Ms. Pittman's union and the employer to place her in

an appropriate alternate position was to retaliate against her in anticipation that she

would engage in protected activity.

In sum, the record reveals no evidence to call into question the employer's

proffered legitimate non-discriminatory reason for terminating Ms. Pittman's

employment as a building cleaner. And Ms. Pittman has produced no evidence

requiring the employer to find her an alternate position at all, let alone immediately

after she failed the 180-day test.[3] Thus, we conclude that Ms. Pittman has not

---

[3] Ms. Pittman claims that the position negotiated for her was available on the date she failed the 180-day test. She cites no record support for this claim, but even if true, she has failed to explain how the union rules would permit her to immediately fill the position.

12

demonstrated pretext and the district court correctly granted summary judgment to the employer.

**IV.    CONCLUSION**

The judgment is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

13